CITY OF DES MOINES, Appellant, v. RAY E. FOWLER et al., Appellees.

No. 42317.

JUNE 23, 1934.

F. T. Van Liew, City Solicitor, and H. W. Hanson, Special Counsel, for appellant.

Walter R. Dyer, for appellees.

DONEGAN, J.—In January, 1933, an information was filed in the municipal court of the city of Des Moines, Iowa, charging the defendants with unlawfully violating section 3 of city milk ordinance No. 3982, by selling cream in the city of Des Moines without a permit. A plea of not guilty was filed by the defendants and upon trial in the municipal court the defendants were found guilty. From the judgment of the municipal court, the defendants appealed to the district court of Polk county, Iowa, and, after hearing, it was adjudged by the said district court that said section 3 of said ordinance is invalid, and that the conviction of the defendants by the municipal court of said city was without authority in law and is void. From this judgment, the city of Des Moines appealed to this court.

As stated in the opinion filed by the district judge, "The single question involved in this case is, has the city power by ordinance to require a permit from the City Health Department as a prerequisite to selling milk, etc., (including cream) in the City of Des Moines?" Section 3 of the ordinance in question is as follows:

"It shall be unlawful for any person to produce, bring into or receive into the City of Des Moines, or its police jurisdiction, for sale, or to sell, or offer for sale therein, or to have on hand, any milk or milk product defined in this ordinance, who does not secure a permit from the health department of the City of Des Moines. Such permit number shall appear in a conspicuous place on the dairy barn, milk truck, milk plant, milk wagon or store. Such permit may be revoked by the health officer for violation by the holder of any of the terms of this ordinance and/or in any emergency when in the judgment of the health officer the milk supply has become a

public menace, provided that the holder of the said permit shall, after complying with such revocation, have the right of appeal to the board of health of the City of Des Moines for reinstatement. All permits shall expire as of July 1st of each year."

In a memorandum opinion filed by the judge of the district court along with the judgment it is stated that this case is governed by the case of Bear v. City of Cedar Rapids, 147 Iowa 341, 126 N. W. 324, 27 L. R. A. (N. S.) 1150. In that case there was involved an ordinance requiring all persons selling milk or cream within the city to procure a license. The question upon which the decision in that case turned was, whether or not the city had power to enact such an ordinance. After referring to all the provisions of the statute of the state under which it might be claimed that such power had been given to the city, and finding that the power to license milk dealers had been by the statutes conferred upon the state dairy commissioner and had not been delegated to the city, this court said:

" * * * It is manifest that none of them give, either to the city or to the board of health, power to license milk dealers. That power seems to be conferred on the dairy commissioner * * * The universal rule, not only for this state but everywhere, is that 'Municipal corporations can exercise such powers only as are expressly granted, and such implied ones as are necessary to make available the powers expressly conferred and essential to effectuate the purposes of the corporation, and these powers are strictly construed.' * * *

"Even if the city has power to punish by fine or to regulate the milk business, this would not authorize it to exact a license. City v. Bumgardner [42 Iowa 673], supra. No implied power exists, for the reason that the state itself has attempted to regulate the matter, and has provided for licensing the business."

Appellant admits that at the time the Bear case was decided no statute of this state had delegated to cities the power attempted to be exercised by the ordinance involved in that case, but contends that since the decision in the Bear case, legislation has been enacted conferring upon cities the power which the city of Des Moines is attempting to exercise in this case. Such legislation is contained in section 5747, Code 1931, which is as follows:

"5747. * * * Cities and towns, in addition to powers already

granted, shall have within their corporate limits the power by ordinance to:

"1. Provide for the inspection of milk, skimmed milk, buttermilk, and cream, for domestic or potable use.

"2. Establish and enforce sanitary requirements for the production, handling, and distribution of milk, skimmed milk, buttermilk, and cream for domestic or potable use.

"3. Compel the tuberculin test by an accredited veterinarian for dairy cattle supplying milk for human consumption.

"4. Provide for the pasteurization of milk, skimmed milk, and cream. * * * "

It is not claimed by appellant that the statute gives to the city the express power to prohibit the sale of milk by those not having permits issued as provided in the ordinance, but it is contended that the issuance of such permits is a necessary incident to the exercise of the powers conferred in subdivision 2 of the statute. As stated in Bear v. City of Cedar Rapids, supra, loc. cit. 349, 126 N. W. 324, 328:

"The universal rule, not only for this state but everywhere, is that: 'Municipal corporations can exercise such powers only as are expressly granted, and such implied ones as are necessary to make available the powers expressly conferred and essential to effectuate the purposes of the corporation, and these powers are strictly construed.' Or, as stated in other cases, cities of this state have these powers: First, those granted by the Legislature in express words; second, those necessarily or fairly implied or incident to the powers expressly conferred; and, third, those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable."

Many cases are cited by both parties to this appeal, but a great many of such cases are of very little assistance in determining the question now before us. The appellees place much reliance upon the decision in the Bear case, supra. In City of Des Moines v. Manhattan Oil Co., 193 Iowa 1096, 184 N. W. 823, 831, 188 N. W. 921, 23 A. L. R. 1322, we had before us the constitutionality of a statute authorizing cities to establish restricted residence districts, and also the validity of the ordinance purported to have been enacted pursuant to authority delegated by such statute. In holding the ordinance valid we said:

"It (the ordinance) does not prohibit the erection within the restricted district of business buildings, shops, factories, gasoline stations, or any other class of buildings. It does provide, however, that the described area shall constitute a residence district, and that no buildings shall thereafter be erected therein except residences, schoolhouses, churches, and similar structures, without first procuring from the city council a permit therefor. In other words, the provision so made is a regulation and not a prohibition. That the regulation is, to this extent, a legitimate and reasonable exercise of the city's police power is supported by a practically unbroken array of authority."

In Marquis v. City of Waterloo, 210 Iowa 439, 228 N. W. 870, 872, we had before us the validity of a zoning ordinance under which the city attempted to restrain the plaintiff from erecting a gasoline filling station in a residence district. In sustaining the ordinance, reference was made to the Bear case, and we therein said:

"There is some language in Bear v. City of Cedar Rapids, 147 Iowa 341, 126 N. W. 324, 27 L. R. A. (N. S.) 1150, which is seemingly in conflict with the Manhattan Oil Company case. A careful reading of the Bear case will disclose that the real basis of the decision in that case was the lack of authority or power by the city to enact the ordinance therein considered. Manifestly whatever is said in the Bear case upon the subject now under consideration is dictum, and was impliedly rejected by the opinion in the Manhattan Oil Company case, and said dictum used in the discussion in the Bear case cannot be, and is not, controlling or decisive in the instant case."

The authority of the Bear case is, of course, limited to the propositions therein decided, and what that case decided was that, under the statutes as then in effect, no power had been delegated to the city to license or regulate the sale of milk products; and that no such powers would be implied because the statutes conferred the authority in reference to these matters directly upon the state dairy commissioner, and thus indicated that the control of these matters was reserved to the state instead of being delegated to cities.

As we have already seen, however, since the decision in the Bear case, the legislature has enacted section 5747, of the Code of 1931, which does confer upon cities the power to provide by ordinance for the inspection of milk products and the power to establish

and enforce sanitary requirements for the production, handling, and distribution of same. This legislation was enacted for a purpose, and that purpose must have been to confer upon cities a power which they did not already possess. That cities did not possess power to inspect milk, etc., and to enforce sanitary requirements in connection with the production, handling, and distribution of milk and other dairy products when the Bear case was decided, is, of course, of no weight in determining what powers they now possess in reference to such matters under the legislation which has been enacted.

Appellees contend that the ordinance is invalid for the reason that it attempts to confer upon the health department the power to issue a permit; that the power to issue permits necessarily implies the power to prohibit; and that the power to regulate, which was delegated to the city under the statute, does not include or imply the power to prohibit, which it must be construed to possess if permits are required. We think it must be conceded, however, that in conferring upon cities the power by ordinance to provide for the matters which the statute enumerated, it was intended that the cities could provide in such ordinances for all such requirements as were reasonably necessary for carrying out their purposes. It would be a useless and an impotent gesture to confer upon cities the power to enact such ordinances if such cities could not exercise the power to enforce the ordinances thus enacted. We think that the inspection and regulations which it was intended by the statute that cities should exercise would reasonably and necessarily imply the creation of the machinery and procedure for carrying them into effect.

The section of the ordinance involved here shows that it is but one section of what is known as a milk ordinance. There is nothing in the record to show what the other provisions of this ordinance are, but we think it is reasonable to infer that they at least have some reference to the inspection of milk and other dairy products and to the establishment of sanitary requirements surrounding the production and distribution of same. While the section of the ordinance involved in this case contains the provision that no one shall offer or sell milk or dairy products who does not secure a permit from the health department of the city of Des Moines, it does not follow that the issuance of such a permit is an arbitrary matter. The evidence does show that such permits were issued pursuant to applications made by those desiring to sell milk and dairy products in said city, and that such applications call for information

to which the city would reasonably be entitled so that it might make an inspection of the conditions under which such milk and dairy products were being produced and handled, and thus determine whether or not the sanitary requirements of the ordinance were being complied with, as a prerequisite to the issuance of such permit.

It further appears in the section of the ordinance itself which is here involved that the number of the permit when issued shall appear in a conspicuous place on the dairy barn, milk truck, milk plant, milk wagon, or store, in which the same are produced or transported or offered for sale. It seems to us that, in considering the reasonableness and necessity of the legislation in reference to permits, the court must take into consideration the conditions existing in cities enacting such regulations as are authorized by the statute. While the production and sale of milk and dairy products may be a useful employment, the prohibition of which could not be enforced under authority to license, as stated in City of Burlington v. Bumgardner, 42 Iowa 673, nevertheless, the production and sale and method of handling such products are matters that involve the health of the inhabitants of cities, and, the power having been given to cities, by the statute now in force, to inspect such products and enact requirements governing their production, handling, and distribution, we think it cannot be said that the provision for a permit as contained in the ordinance is an arbitrary attempt to prohibit the defendants in the operation of a useful business and the conducting of a useful employment. On the contrary, we think the requirement of such permit must be held to be a reasonable part of the machinery and procedure which the city must employ in keeping a record and providing a method of identification of those who have complied with its regulations, in order that it may exercise and enforce the powers conferred by the statute and undertaken in the ordinance.

In Huston v. City of Des Moines et al., 176 Iowa 455, loc. cit. 478, 156 N. W. 883, we said:

"If an ordinance be passed in virtue of express legislative power and substantially follows the powers granted, a court will sustain it regardless of its opinion as to its reasonableness. (Citing cases.) If passed in virtue of incidental or implied power granted by the legislature, courts will review the question of reasonableness, and, if in excess of powers granted, may declare it invalid. But the

unreasonable character of the ordinance must plainly appear." (Citing cases.)

We do not think the unreasonableness of the ordinance has been sufficiently established in this case to justify a court in holding it invalid.

Some things are said in appellees' brief and argument to the effect that the health commissioner of the city of Des Moines acted in an arbitrary manner and practically refused to issue a permit, although the inspection made by the city had shown that the requirements of the ordinance had been complied with. We think there is evidence in the record on the other hand tending to support the claim of the city that the inspection made had shown that all the requirements of the ordinance had not been complied with. On the trial of the case in the municipal court, this issue does not seem to have been stressed by either party. The district court announced in its opinion that the only question involved in the case was whether the city had power by ordinance to require a permit from the city health department as a prerequisite to selling milk, etc. The opinion filed is confined to a consideration of this proposition, and the judgment entered is based solely upon the invalidity of the ordinance.

We do not think the record is such that we can determine whether or not the appellees had made a sufficient compliance with the requirements of the ordinance to entitle them to a permit. The defense on that ground implies, of course, the validity of the ordinance. If the ordinance be valid, as we think it is, and, if the health department arbitrarily refuses to issue a permit after a compliance with the regulations prescribed by such ordinance, the appellees undoubtedly have a remedy by which the issuance of a permit can be enforced. We are not here concerned with that remedy. In this case the conviction of the appellees in the municipal court was reversed by the district court on the ground that the ordinance was invalid. In this, we think the district court erred, and its judgment is, therefore, reversed.—Reversed.

All Justices concur.