F. J. CROW, Appellant, v. BOARD OF ADJUSTMENT of Iowa City et al., Appellees; N. F. SCHMITT et al., Intervenors, Appellees.

No. 44697.

October 25, 1939.

Arthur O. Leff, for appellant.

Robert L. Larson, for appellees.

Byington & Rate, for intervenors-appellees.

Oliver, C. J.—Under chapter 324 Code of Iowa, the city of Iowa City adopted a zoning ordinance which established four building zones, or districts, known as A Residence, B Residence, Business and Industrial. In addition to the buildings and premises included in the A Residence districts the ordinance permits in the B Residence districts various additional buildings and uses such as lodging and boarding houses, apartment houses, hospitals and sanitariums.

Appellant, F. J. Crow, for many years a practicing veterinary surgeon in Iowa City, proposed to purchase lot 7, block 9, County Seat Addition, and to erect thereon a building containing on the second floor an apartment and on the first floor a veterinary office and hospital, equipped for the treatment of dogs and smaller animals.

This lot 7 is situated in a B Residence zone. The surrounding neighborhood has been built up for many years and contains no recently built dwellings. The east half of the block, immediately across the alley from lot 7 is zoned Industrial. The block to the south is Business and Industrial, and beyond

this are railroad yards. To the north the business district is about two blocks distant. Across the street to the west is a school house and several residences. Some of the houses adjacent to lot 7 are used partially for business purposes.

In March, 1938, Dr. Crow called upon Mr. Monk, city building inspector, made full disclosure of the proposed plan and asked if a permit could be secured to erect such veterinary office and hospital upon said lot. Monk thought it permissible but desired the opinion of the city attorney. After securing from said city attorney an informal opinion that such building was proper in B Residence districts, Monk notified Dr. Crow he would issue such building permit.

Relying upon this advice, Dr. Crow, on about March 26, 1938, purchased the lot for $1,500 and proceeded to tear down a large old house situated thereon. The work of demolition having been completed, Dr. Crow, on April 29, made formal application with plans and specifications for a building permit for a two-story building, 25 x 30 feet, to be used as an apartment and veterinarian hospital. Thereupon the city building inspector again contacted the city attorney, this time by letter which referred to the application of Dr. Crow, and requested a written opinion whether the terms, "hospitals and sanitariums", as used in the zoning ordinance included a "dog hospital". The city attorney after investigation and study gave the building inspector a written opinion which stated:

"According to Mr. Webster a hospital and sanitarium is defined as a place where humans and animals suffering from disease and injuries are cared for. I find no other provision made in our zoning ordinance for hospital whether for animals or persons. Section 6399 of the 1935 Code of Iowa provides that certain animals cannot be kept in dwellings but that does not include dogs. Therefore, it would seem to me that you have no choice but to issue said permit on the proper application. If this place should develop into a nuisance, any person aggrieved may have his remedy at law."

After receipt of this opinion the building permit was issued and the fee therefor paid on April 29. Dr. Crow immediately entered into a contract for the construction of the building and prior to May 2, had purchased materials for said building

and had completed a part of the excavation and foundation work at a cost of several hundred dollars. On May 2, certain owners of neighboring properties filed with the building inspector and the board of adjustment an appeal from the decision and action of the building inspector in issuing such permit. Accordingly on May 3, the building inspector ordered Dr. Crow to cease said building construction pending the hearing before the board upon said objections. Shortly thereafter the hearing was had and the board of adjustment ruled that "hospitals and sanitariums as defined in the Ordinance are not intended to include animals." Therefore, the Board ordered the permit cancelled and revoked and directed the building inspector to cancel the same.

Thereupon Dr. Crow instituted in district court this proceeding in Certiorari in accordance with certain provisions of chapter 324, Code of 1935, to review the doings of the board in the premises. Several owners of neighboring properties intervened in said action in behalf of respondents. Upon trial, judgment was entered annulling the writ and petitioner appeals therefrom.

As a ground for reversal appellant contends the Board exceeded its authority in revoking the permit after he had, on the faith of it, incurred material expense. The factual basis for this contention is sustained by the record.

It is undisputed that Dr. Crow, prior to the time he incurred any expense or liability, made complete disclosure to the building inspector of the proposed building and plans; that he would not have purchased the property and dismantled the building thereon had it not been for the assurances given him by the building inspector, and that relying upon and in accordance with the formal building permit issued him by the building inspector he proceeded with the construction work and thereafter incurred substantial additional expense and liability. In these transactions Dr. Crow appears to have at all times acted in good faith. Moreover, there is no contention that the building or its planned uses would constitute a nuisance or would contravene any statute or ordinance other than the questioned provisions of the zoning ordinance as construed by the board of review.

A building permit duly and legally issued by a munici-

pality is more than a mere license revokable at the will of the licensor. We have held that when the permitee has to some extent acted thereon and thereby incurred expense such permit it not revokable on the grounds that the proposed building and business would be objectionable to residents of the neighborhood. Rehmann v. Des Moines, 200 Iowa 286, 204 N. W. 267, 40 A. L. R. 922. However, such holding will not apply if the building permit was not legally granted. Zimmerman v. O'Meara, 215 Iowa 1140, 245 N. W. 715. Therefore, inquiry should be directed to the original action of the building inspector in issuing the permit. Was the permit valid when issued by the building inspector?

Had the ordinance been clear and explicit upon this proposition, its very words would answer the foregoing question. However, the word "hospital" has been given various definitions including those set out in the opinion of the city attorney. Therefore, its meaning is not clear and unambiguous and as here employed is uncertain. More than one definition might reasonably be given it and interpretation is necessary in order to determine its exact meaning as used in the ordinance.

This interpretation was the duty of the building inspector and upon it was based the ruling and issuance of the controverted building permit. Apparently, no interpretation had been theretofore authoritatively made for his guidance. In making his decision he was compelled to rely largely upon the ordinance itself. In this situation he properly consulted with and secured the opinion of the attorney employed by the city for such purpose.

The original ruling was based upon a broad definition of the word "hospital". Whether some other definition or interpretation would have been more proper or correct we do not determine nor intimate. The ruling of the building inspector was not clearly erroneous nor without basis. On the contrary the proposition was doubtful and fairly debatable and the language fairly susceptible to the interpretation given it. Hence it cannot be properly said that he was without right or authority to grant the original permit. Call Bond & Mortgage Co. v. Sioux City, 219 Iowa 572, 259 N. W. 33.

The building permit was valid in its inception and during

the time the construction work was in progress. Due to the change in status quo during this period, Dr. Crow secured a vested right to proceed under the building permit as issued. Consequently, the board acted illegally in ordering the permit revoked upon the grounds relied upon.

Therefore, the trial court erred in annulling the writ.—Reversed.

BLISS, SAGER, MILLER, RICHARDS, and HALE, JJ., concur.